# 24-342-cv

_____

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
_____

TZUMI ELECTRONICS LLC

*Plaintiff/Appellant,*

v.

THE BURLINGTON INSURANCE COMPANY

*Defendant/Appellee,*

---

## APPELLANT'S OPENING BRIEF

---

On Appeal from Final Judgment Entered on January 19, 2024, in the United States District Court for the Southern District of New York, New York City, Case No. 22-cv-09995 the Honorable Katherine Polk Failla, United States District Judge

David A. Gauntlett
GAUNTLETT & ASSOCIATES
5 Pelican Vista Dr.
Newport Coast, CA 92657
Telephone:  (949) 5531010
Facsimile:  (949) 5532050

Attorneys for Plaintiff/Appellant
Tzumi Electronics LLC

304542_29.docx

## DISCLOSURE STATEMENT

Pursuant to F.R.A.P. 26.1, Plaintiff/Appellant, Tzumi Electronics LLC certifies that it is a limited liability company with no publicly traded companies as members and certifies that it is a privately held limited liability company.

Dated: April 8, 2024

By:    /s/ David A. Gauntlett

David A. Gauntlett
GAUNTLETT & ASSOCIATES
5 Pelican Vista Dr.,
Newport Coast, CA 92657
Telephone:  (949) 5531010
Facsimile:  (949) 5532050

Attorneys for Plaintiff/Appellant
Tzumi Electronics LLC

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ...................................................................i

TABLE OF CONTENTS .......................................................................ii

TABLE OF AUTHORITIES .....................................................................v

JURISDICTIONAL STATEMENT ............................................................1

    District Court's Jurisdiction ..........................................................1

    Appellate Court's Jurisdiction .......................................................2

    Standard Of Review .......................................................................2

STATEMENT OF THE ISSUES ...............................................................3

STATEMENT OF THE CASE ..................................................................3

STATEMENT OF FACTS .......................................................................5

    The Talley Action ..........................................................................5

    Burlington's Policy ........................................................................6

    Burlington's Denial Of A Defense .................................................7

    Tzumi's Coverage Lawsuit ............................................................8

SUMMARY OF ARGUMENT .................................................................8

    Burlington Did Not Evaluate Coverage Claims..............................8

    Cal. Civ. Code § 1770(a)(8) Supports Indirect Injury Liability....8

    *Tzumi v. Twin City* Summary Order Did Not Address Civ. Code § 1770(a)(8).............................................................................9

    New York Coverage Cases Distinguishing "Puffery" Are Irrelevant Here.......................................................................10

    Settlement Recitals Are "Extrinsic Evidence"............................12

    Competitors Or Products Need Not Be Named To Be Disparaged ........13

    District Court Failed To Consider Potential For Amendment ..............14

ARGUMENT ........................................................................................14

304542_29.docx

I.    IMPLICIT, INDIRECT DISPARAGEMENT WAS ALLEGED...........14

      A.    The Three-Part Test For Indirect Implicit Disparagement..........14

            1.    The Publication Need Only Disparage Another's Products ................................................................15

            2.    Tzumi's Targeting Of Competitive Products Is Disparagement................................................16

            3.    The "Publication" Is Allegedly Injurious ...........................18

      B.    Burlington Chose Not To Narrowly Define Disparagement.........18

      C.    District Court's Specificity In Pleading Requirement Is Untenable ................................................................19

            1.    The References To Cal. Civ. Code § 1770(a)(8) Suffice ......19

            2.    The SAC Broadly Asserts Statutory Disparagement Claims................................................................20

            3.    *Ruder & Finn* and *Fitzpatrick* Set A Low Bar For Specificity ................................................................21

      D.    The District Court Ignored Salient Extrinsic Evidence ................24

            1.    Extrinsic Evidence Is Not Limited To Formal Discovery................................................................24

            2.    Burlington Saw The Settlement Agreement Before Its Execution................................................................25

            3.    Settlement Agreement Recitals Are Extrinsic Evidence ................................................................26

      E.    The Potential for Amendment Supports Finding A Defense ........28

II.   NEW YORK LAW RECOGNIZES COVERAGE FOR IMPLICIT DISPARAGEMENT ................................................................29

      A.    New York Embraced Implicit Disparagement In *Natural Organics* ................................................................29

      B.    Specific Allegations Of Implicit Disparagement Suffice ...............30

      C.    Negative Comparative Statements Imply Disparagement ............31

III.  PRODUCT EQUIVALENCE CASES SUPPORT CLAIMS HERE ................................................................32

IV.   NO EXCLUSIONS BAR A DEFENSE ................................36

V.    CONCLUSION ................................................................37

**CERTIFICATE OF COMPLIANCE** .................................................**39**

**CERTIFICATE OF SERVICE** ........................................................**40**

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

**Federal Cases**

*Aaron Abadi v. American Airlines, Inc., et al.*,
     No. 23-CV-4033 (LJL), 2024 WL 1346437
     (S.D.N.Y. Mar. 29, 2024) ......................................................................11

*Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*,
     214 F. App'x 596 (7th Cir. (Wis.) 2007) ............................................33

*Axiom Ins. Managers, LLC v. Capitol Spec. Ins. Corp.*,
     876 F. Supp. 2d 1005 (N.D. Ill. (E.D.) 2012) ....................................32

*Brewer v Vill. Of Old Field.*,
     311 F. Supp. 2d 382 (E.D.N.Y. 2004) .................................................28

*Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*,
     955 F.3d 305 (2d Cir. 2020) ..................................................................2

*Burgett, Inc. v. Am. Zurich Ins. Co.*,
     830 F. Supp. 2d 953 (E.D. Cal. 2011) ...........................................12, 35

*Century 21, Inc. v. Diamond State Ins. Co.*,
     442 F.3d 79 (2d. Cir. (N.Y.) 2006).........................................................9

*Cincinnati Ins. Co. v. Crown Labs., Inc.*,
     No. 2:08-CV-240, 2010 U.S. Dist. LEXIS 164770
     (E.D. Tenn. Mar. 30, 2010).................................................................33

*Cincinnati Ins. Co. v. E. Atl. Ins. Co.*,
     260 F.3d 742 (7th Cir. 2001) ..............................................................32

*Claridge v. RockYou, Inc.*,
     785 F. Supp. 2d 855 (N.D. Cal. 2011)................................................21

*Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*,
     No. CIV.A. 06 C 1658, 2006 WL 2331144 (N.D. Ill. Aug. 8,
     2006), *aff'd*, 500 F.3d 640 (7th Cir. 2007) ..................................31, 32

*Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*,
No. CV-09-1640 DLI VVP, 2012 WL 1077448 (E.D.N.Y. Mar. 9,
2012), *aff'd on other grounds*, 514 F. App'x 21 (2d Cir. 2013) ...........29, 35, 36

*Elite Brands, Inc. v. Pa. Gen. Ins. Co.*,
164 F. App'x 60 (2d Cir. 2006) ...............................................................9, 10, 31

*Emps. Ins. Co. v. Duplan Corp.*,
899 F. Supp. 1112 (S.D.N.Y. 1995) ....................................................................28

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016) .................................................................13

*E.piphany Inc. v Inc. v. St. Paul Fire & Marine Ins. Co.*,
590 F. Supp. 2d 1244 (N.D. Cal. 2008) ..............................................................35

*First One Lending Corp. v. Hartford Cas. Ins. Co.*,
No. SACV 13-01500, 2017 U.S. Dist. LEXIS 36548
(C.D. Cal. Mar. 13, 2017) ...................................................................................26

*Harrington Haley L.L.P. v. Nutmeg Ins. Co.*,
39 F. Supp. 2d. 403 (1999) .................................................................................28

*Hartford Fire Ins. Co. v. Vita Craft Corp.*,
911 F. Supp. 2d 1164 (D. Kan. 2012)...........................................................23, 24

*High Point Design, LLC v. LM Ins. Corp.*,
911 F.3d 89 (2d Cir. 2018) ...........................................................................24, 27

*JAR Lab'ys LLC v. Great Am. E & S Ins. Co.*,
945 F. Supp. 2d 937 (N.D. Ill. 2013)..................................................................33

*Jones v. Cty. of Suffolk*,
936 F.3d 108 (2d Cir. 2019) .................................................................................2

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
No. 21-1082, 2022 WL 258569 (2d Cir. Jan. 28, 2022)....................................37

*Kirby v. Wildenstein*,
784 F.Supp. 1112 (S.D.N.Y.1992) ....................................................................13

*Lembcke v. United States*,
181 F.2d 703 (2d Cir. (N.Y.) 1950) ...................................................................11

304542_29.docx

*Miller v. Ghirardelli Chocolate Co.*,
    No. C 12- 04936 LB, 2013 U.S. Dist. LEXIS 49733
    (N.D. Cal. Apr. 5, 2013) ...................................................................31

*Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*,
    295 F. Supp. 2d 335 (S.D.N.Y. 2003) ...............................................29

*Nat'l Union Fire Ins. Co. v. Seagate Tech., Inc.*,
    466 F. App'x 653 (9th Cir. (Cal.) 2012)............................................34

*PCB Piezotronics, Inc. v. Kistler Instrument Corp.*,
    No. 96-CV-0512E(F), 1997 WL 800874
    (W.D.N.Y. Dec. 31, 1997) ..................................................................17

*Perma Research & Dev. Co. v. Singer Co.*,
    542 F.2d 111 (2d Cir. (N.Y.) 1976) ...................................................27

*Proskin v. Tzumi Innovations LLC*,
    No. 1:22CV05919(JSR) (S.D.N.Y. July 12, 2022) .............................10

*In re Residential Capital, LLC*,
    Nos. 12-12020 (MG), 15-01025 (DSJ), 2022 Bankr. LEXIS 3601
    (Bankr. S.D.N.Y. Dec. 21, 2022).......................................................26

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007).............................................................................27

*Stamford Wallpaper Co. v. TIG Ins.*,
    138 F.3d 75 (2d Cir. 1998) ..............................................................9, 23

*Talley v. Tzumi Elecs. LLC*,
    No. 20 CIV. 4074 (VM), 2021 WL 10269415
    (S.D.N.Y. Feb. 17, 2021)..............................................................*passim*

*Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*,
    No. 22 CIV. 2171 (KPF), 2023 WL 4896169
    (S.D.N.Y. Aug. 1, 2023) ......................................................................19

*Tria Beauty, Inc. v. Nat'l Fire Ins. Co. of Hartford*,
    No. C 12-05465 WHA, 2013 U.S. Dist. LEXIS 71499
    (N.D. Cal. May 20, 2013)....................................................................18

*Tzumi Elecs. LLC v. Burlington Ins. Co.*,
No. 22 CIV. 9995 (KPF), 2024 WL 217764
(S.D.N.Y. Jan. 19, 2024)........................................................................12, 14, 37

*Tzumi Innovations, LLC v. Twin City Fire Ins. Co.*,
No. 23-1241-CV, 2024 WL 1338804 (2d Cir. Mar. 29, 2024) ...............9, 10, 37

*Vector Prods. v. Hartford Fire Ins. Co.*,
397 F.3d 1316 (11th Cir. (Fla.) 2005) ................................................................13

*Unique Sports Generation, Inc. v. LGH-III, LLC*,
No. 03 CIV. 8324 JGK DF, 2005 WL 2414452
(S.D.N.Y. Sept. 30, 2005)...................................................................................29

*Vogelfang v. Riverhead Cnty. Jail*,
No. 04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064
(E.D.N.Y. Apr. 19, 2012) ...................................................................................27

*VR Optics, LLC v. Peloton Interactive, Inc.*,
No. 16-CV-6392 (JPO), 2021 U.S. Dist. LEXIS 60901
(S.D.N.Y. Mar. 30, 2021) ...................................................................................37

*Winklevoss Consultants, Inc. v. Fed. Ins. Co.*,
11 F. Supp. 2d 995 (N.D. Ill. 1998)...................................................................17

*Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*,
547 F. Supp. 3d 381 (S.D.N.Y. 2021) ...............................................................15

**State Cases**

*Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*,
31 N.Y.3d 131 (2018) .........................................................................................19

*Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*,
898 N.E.2d 216 (2008) .......................................................................................32

*CNA Cas. of Cal. v. Seaboard Sur. Co.*,
176 Cal. App. 3d 598 (1986) ..............................................................................22

*Fitzpatrick v. Am. Honda Motor Co.*,
78 N.Y.2d 61 (1991) ...........................................................................18, 20, 21, 23

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*,
59 Cal. 4th 277 (2014) ...........................................................................11, 12, 34

*Hartford Cas. Ins. Co. v. Vogue Int'l, LLC*,
No. A150921, 2018 Cal. App Unpub. LEXIS 3467
(May 21, 2018)....................................................................................................34

*JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*,
36 A.D.3d 555 (N.Y. App. Div. 2007) ...............................................................31

*Julie Rsch. Lab'ys., Inc. v. Gen. Resistance, Inc.*,
25 A.D.2d 634 (N.Y. App. Div. 1966) .................................................10, 35, 36

*Nat. Organics, Inc. v. OneBeacon Am. Ins. Co.*,
959 N.Y.S.2d 204 (N.Y. App. Div. 2013) .................................11, 13, 14, 30, 33

*People v. Bourne*,
139 A.D.2d 210 (1988) .......................................................................................10

*Ruder & Finn, Inc. v. Seaboard Sur. Co.*,
52 N.Y.2d 663 (1981) ...................................................................................21, 22

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125, 1138 (2020) ...................................................................13

*Syvertsen v. Great Am. Ins. Co.*,
700 N.Y.S.2d 289 (N.Y. App. Div. 1999)...........................................................29

*Terra Nova Ins. Co. v. Fray-Witzer*,
869 N.E.2d 565 (Mass. 2007) .............................................................................15

*Tower Nat'l Ins. Co. v. Nat'l Bus. Capital, Inc.*,
2014 NY Slip Op 31985(U) (Sup. Ct. 2014) ......................................................15

*Virtual Bus. Enterprises, LLC v. Maryland Cas. Co.*,
No. CIVA07C12070MMJ, 2010 Del. Super. LEXIS 141 (Del.
Super. Apr. 9, 2010) *appeal refused*, 994 A.2d 744 (Del. 2010) ......................15

*Wellbilt Equip. Corp. v. Fireman*,
719 N.Y.S.2d 213 (App. Div. 2000)....................................................................10

## Federal Statutes

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1294(1) ...........................................................................2

28 U.S.C. § 1332 ................................................................................1

## State Statutes

§ 815 ILCS 510/2 .............................................................................31

Cal. Civ. Code § 1750 ...........................................................20, 21, 28

Cal. Civ. Code § 1761(d) .................................................................21

Cal. Civ. Code § 1770 ......................................................................21

Cal. Civ. Code § 1770(a)(8) ......................................................*passim*

## Other Authorities

20-131 APPLEMAN ON INSURANCE LAW & PRACTICE ARCHIVE § 131.3
(2ND 2011) ....................................................................................17

David A. Gauntlett, *Coverage Based on Potential for Amendment of
Underlying Pleadings*,
https://www.gauntlettlaw.com/news/ltstlvxs1vwlifa3rni6btlbkoqka
p (Sep. 3, 2023) ............................................................................14

David A. Gauntlett, INSURANCE COVERAGE OF INTELLECTUAL
PROPERTY ASSETS (2nd ed. [Supp. 2022-1]) by Wolters Kluwer
Law/Business, § 17.06[A][4] "Misstatements About 'Equivalence'
Evidences Disparagement'" ...........................................................34

David A. Gauntlett, *New York District Court Disputes Whether
Settlements Clarify Potential Coverage*,
https://www.gauntlettlaw.com/news/new-york-district-court-
disputes-whether-settlements-clarify-potential-coverage
(Feb. 1, 2024) ..........................................................................26, 27

David A. Gauntlett, *Second Circuit Takes Limited View of Implicit
Disparagement under New York Law*,
https://www.gauntlettlaw.com/news/second-circuit-
takes-limited-view-of-implicit-disparagement-under-new-york-law

(April 4, 2024) ...................................................................................9

David P. Schack, *Coverage for "Disparagement": A Powerful Tool for Triggering the Duty to Defend in Business Disputes*, https://btlaw.com/insights/blogs/policyholder-protection/2014/coverage-for-disparagement-a-powerful-tool-for-triggering-the-duty-to-defend-in-business-disputes (Dec. 18, 2014) .................34

Donald S. Malecki and Arthur L. Flitner, *Commercial General Liability* (2d ed. 1986) ......................................................................17

Jarret A. Williams, *Coverage: The Duty to Defend Implicit Claims*, Vol. 19, No. 2 (March/April 2009).................................................11

## JURISDICTIONAL STATEMENT

### District Court's Jurisdiction

The district court had jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs based on the defense costs Tzumi has incurred in the underlying action styled as *Talley v. Tzumi Elecs. LLC*, Case No. 1:20-cv-04074-VM in the United States District Court of the Southern District of New York (the "Talley Action"), filed on May 27, 2020. [JA43] In addition to other and further relief, declaratory relief is sought.

Tzumi Electronics, LLC ("Tzumi") is a New York limited liability company consisting of four individual members: Ezra Erani, Gabriel Khezrie, Rena Haber, and Hillel Haber, all of whom are residents of the state of New York and citizens of New York. [JA12] Therefore, Tzumi is a citizen of New York.

The Burlington Insurance Company ("Burlington") is an insurance company organized and existing under the laws of the state of Illinois and with its principal place of business at 238 International Road, Burlington, North Carolina 27215. [JA12] Burlington is a citizen of Illinois and North Carolina.

There is complete diversity of citizenship between the parties to this case.

## Appellate Court's Jurisdiction

28 U.S.C. §§ 1291 and 1294(1) provide this Court of Appeals jurisdiction because the order being appealed was entered in the United States District Court, Southern District of New York, which this appellate court "embraces."

The Judgment, which disposed of all parties' claims, denied Tzumi's Cross Motion for Partial Summary Judgment and granted Burlington's Cross Motion for Summary Judgment, was entered on January 19, 2024. [JA457; SPA30] Tzumi's Notice of Appeal was timely filed on February 7, 2024. [JA458; SPA31]

## Standard Of Review

The Court reviews *de novo* the grant of Burlington's Cross-Motion for Summary Judgment, taking its factual allegations to be true and drawing all reasonable inferences in Burlington's favor. *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020).

The Court reviews the district court's denial of Tzumi's Cross Motion for Summary Judgment *de novo*. *Jones v. Cty. of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019).

## STATEMENT OF THE ISSUES

1. Whether the district court erred in granting Burlington's summary judgment motion by ignoring extrinsic evidence showing the underlying plaintiffs alleged potentially covered "advertising injury" offense of disparagement.

2. Whether the district court erred by failing to consider the Settlement Agreement recitals and its inferences as extrinsic evidence revealing a potential for amendment of the complaint to specifically allege against Tzumi the "advertising injury" offense of indirect implicit disparagement.

3. Whether the district court erred by ignoring potentially covered liability under California Civil Code § 1770(a)(8) based on Tzumi's advertisements denigrating competitors' higher priced products for their inferior performance.

## STATEMENT OF THE CASE

On May 27, 2020, Sydney Talley filed a nationwide consumer class action against Tzumi in the U.S. District Court for the Southern District of New York in the Talley Action. [JA43] The complaint was amended twice, with the Second Amended Complaint filed June 29, 2021. [JA66]

On or before August 27, 2019, Tzumi first notified Burlington of the Talley claim by submitting a notice of loss. [JA89] Burlington denied coverage via letter on August 27, 2019. [JA89] On July 20, 2022, Tzumi's insurance coverage counsel requested Burlington's reconsideration of its defense obligations, notifying

Burlington of a proposed settlement agreement, and including a copy of the proposed agreement. [JA95] Burlington again denied any duty to provide defense reimbursement or pay the settlement on August 10, 2022. [JA34]

Tzumi filed a declaratory judgment action against Burlington for a determination that Burlington had a duty to defend Tzumi in the Talley Action and seeking payment of all reasonable defense expenses. [JA11-12]

The district court allowed Burlington to file a Motion for Summary Judgment, [JA121] and Tzumi to file a Motion for Partial Summary Judgment on Burlington's duty to defend, with filed Opposition briefs but no replies. [JA163] The parties did so. [JA8-9]

The district court Judge Failla denied Tzumi's Motion for Partial Summary Judgment and granted Burlington's Motion for Summary Judgment on January 19, 2024. [JA456-57; SPA29-30] The district court did not find any basis in the Talley Action for express disparagement potentially triggering coverage under the policy but the court failed to address Talley's expressly asserted liability under Cal. Civ. Code § 1770(a)(8) and similar state statutes. [JA453-54; SPA26-27] The district court did not address any exclusions to potential coverage under the policies.

## STATEMENT OF FACTS

### The Talley Action

The Talley Action's Second Amended Complaint ("SAC") alleged that Tzumi marketed its products with misleading information. [JA66-74; JA82-83] Namely, Tzumi advertised its power banks in a manner suggesting they possessed a greater charging capacity than they actually had (expressed in Milliampere-hours[1] (mAh)). [JA68] As clarified in the Settlement Agreement, which is "extrinsic evidence" known to Burlington prior to its denial of a defense, these publications disparaged Tzumi's competitors.[2] [JA282-83] By advertising and promoting its products in this manner, "the pricing of Tzumi's power products made them appear much more affordable than competitors' similar products that are not claimed to be deceptively labeled." [JA282]

The SAC explicitly alleges "unlawful, unjust, unfair, and deceptive practices in misrepresenting the mAh of [Tzumi's] Products and [thus] violating state law during the applicable statute of limitations period[]." [JA68] The SAC included images of Tzumi products displaying mAh ratings on the packaging. [JA70-71] It further alleges that: "After purchasing the Pocket Juice 4000, Ms. Talley and Ms. Ervin were disappointed to find they were forced to recharge the Pocket Juice 4000

---

[1] Milliampere-hour (mAh) is used to rate the energy capacity of common household batteries and those of electronic devices such as smartphones, laptops and appliances.

[2] See Section I.D.3 of this Brief.

more often than they expected. Ms. Talley and Ms. Ervin, like any reasonable consumer and member of the putative classes, would not have purchased the Product, or would have paid less, had they known the truth about its mAh." [JA24; JA37-38]

These allegations that Tzumi misstated its products' performance compared to competitors' products triggered disparagement coverage under offense (d). [JA19-23; JA66-74; JA82-83; JA242] Cal. Civ. Code § 1770(a)(8) (and analogous SAC alleged statutory violations under Illinois, Michigan, and Texas law) gave the Talley class standing to sue for injury suffered from Tzumi's publications because Tzumi allegedly disparaged competing products. [JA77-83]

After Burlington twice refused to defend the case, Tzumi agreed to settlement of the Talley Action on August 30, 2022. [JA282] The Settlement Agreement required a $225,000 settlement payment. [JA283]

### Burlington's Policy

Tzumi purchased Burlington Commercial General Liability Policy (No. 0895CAP0009761) ("the Policy") for the period of December 19, 2017 to December 19, 2018. [JA216] Tzumi paid all policy premiums and otherwise fully discharged all its obligations to Burlington. [JA208] The Policy covers claims for "damages because of 'personal injury' or 'advertising injury.'" "Personal and advertising injury" is defined to include "injury . . . arising out of . . . oral or written publication,

in any manner, of material that . . . disparages a person's or organization's goods, products or services." [JA233; JA242]

### Burlington's Denial Of A Defense

In light of Burlington's Policy language covering the allegations in the Talley Action, Tzumi notified Burlington of that claim, submitting a notice of loss before August 27, 2019. [JA89; JA153] On August 27, 2019 Burlington denied defense coverage asserting that the claimants' allegations did not constitute an enumerated offense within the 'personal and advertising injury' coverage of the Policy, citing exclusions. [JA89-93]

Tzumi's insurance coverage counsel sent a July 20, 2022 letter notifying Burlington of a proposed Settlement Agreement in the Talley Action, including a copy of the proposed agreement, requesting Burlington reconsider its denial of coverage. [JA95-100] It also requested that Burlington advise if it contended that the proposed Settlement Agreement was not reasonable or did not evidence why Burlington owed a defense to Tzumi in the Talley Action. [JA100]

Burlington again denied coverage on August 10, 2022 despite the proposed Settlement Agreement clarifying Talley's contentions. [JA34-40] Burlington claimed four exclusions barred a defense: (1) Material Published With Knowledge of Falsity, (2) Quality or Performance of Goods-Failure to Conform to Statements,

(3) Wrong Description of Prices, and (4) Recording and Distribution of Material or Information in Violation of Law. [JA36-40]

## Tzumi's Coverage Lawsuit

Burlington owed Tzumi a defense under its Policy for the "personal and advertising injury" offense (d) "disparagement" claims in the Talley Action. [JA242] Nonetheless, Burlington refused to fund the defense of the Talley Action or to settle the Talley Action. [JA212]

## SUMMARY OF ARGUMENT

### Burlington Did Not Evaluate Coverage Claims

The district court noted claims that "the Underlying Plaintiffs identified misrepresentations made by Tzumi on the packaging of its products, which misrepresentations conveyed a far greater energy capacity than was actually determined by independent lab testing." [JA433; SPA6]

Burlington's denial of a defense failed to evaluate potential coverage for disparagement in light of the statutory provision—Cal. Civ. Code § 1770(a)(8)— which confers standing to sue on any purchaser of the insured's product, based on the purchaser's right to sue for representations that disparaged a competitors' products as overpriced and of lesser quality. [JA33-41]

### Cal. Civ. Code § 1770(a)(8) Supports Indirect Injury Liability

The implicit disparagement claims (which that statute expressly empowered class action claimants to pursue) are based on Tzumi's promotional publications.

[JA19-30] They allegedly claimed mAh performance equivalent to that of higher priced competitors. [JA19-30] That indirectly disparages the competitors who are charging higher prices. [JA19-24] These allegations do not depend on a "strained, implausible reading of the complaint."[3] Nor did they require the Court to "hypothesize or imagine episodes or events that cannot be found among the allegations, and cannot reasonably be deduced from them."[4] The cases purportedly seeking "specific assertions of unfavorable facts reflecting upon the rival product,"[5] did not purport to set the legal standard for implicit disparagement coverage cases. [JA440-45; SPA13-18] None necessarily required more specific allegations than made in the Talley Action when the allegations are viewed holistically as New York law requires. [JA440-45; SPA13-18]

### *Tzumi v. Twin City* Summary Order Did Not Address Civ. Code § 1770(a)(8)

The Second Circuit Summary Order in *Tzumi Innovations, LLC v. Twin City Fire Ins. Co*., No. 23-1241-CV, 2024 WL 1338804, at *2 (2d Cir. Mar. 29, 2024) ("Summary Order"), cited *Elite Brands*[6]. The Summary Order provides no authority to deny a defense for Tzumi in the Talley Action.[7] The Second Circuit panel

---

[3] *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d. Cir. (N.Y.) 2006).

[4] *Stamford Wallpaper Co. v. TIG Ins.,* 138 F.3d 75, 81 (2d Cir. 1998).

[5] *Elite Brands, Inc. v. Pa. Gen. Ins. Co.*, 164 F. App'x 60, 62 (2d Cir. 2006).

[6] 164 F. App'x at 62.

[7] David A. Gauntlett, *Second Circuit Takes Limited View of Implicit Disparagement under New York Law*, https://www.gauntlettlaw.com/news/second-circuit-takes-limited-view-of-implicit-disparagement-under-new-york-law (April 4,

affirming the district court did not reach the seminal issue raised whether Cal. Civ. Code § 1770(a)(8) claims presumed on disparagement required a defense by triggering potential coverage under an "advertising injury" offense (d).[8] It concluded that "[t]he promotions identified in the [*Proskin v. Tzumi Innovations LLC*, No. 1:22CV05919(JSR) (S.D.N.Y. July 12, 2022)] . . . did not include any assertions that reflected on competitor products and thus cannot [implicate disparagement]."[9] [JA408-11]

**New York Coverage Cases Distinguishing "Puffery" Are Irrelevant Here**

*Elite Brands*,[10] however, relied on the logic of *Julie Rsch. Lab'ys., Inc. v. Gen. Resistance, Inc.,* 25 A.D.2d 634, 634 (N.Y. App. Div. 1966) which did not address implicit disparagement claims. That decision is not, therefore, any authority for later cases because "a case 'is precedent only as to those questions presented, considered and squarely decided[.]'"[11] The *Julie Research* court recognized that "specific assertions of unfavorable facts reflect[] upon the rival product" *Id.* at 634. It is a reasonable inference from that court's analysis that the SAC need not reference the competitor who promotes a "rival product" nor identify the "rival products" per se

---

2024).

[8] *Tzumi Innovations,* No. 23-1241-CV, 2024 WL 1338804, at *2 ("Summary Order").

[9] *Id.*

[10] 164 F. App'x at 62.

[11] *Wellbilt Equip. Corp. v. Fireman*, 719 N.Y.S.2d 213, 217 (App. Div. 2000) (quoting *People v. Bourne,* 139 A.D.2d 210, 216 (1988)).

so long as the facts that "reflect[] upon the rival" product are asserted or reasonable inferred from the allegations in the SAC as was the case in this lawsuit.

The *Julie Research* specificity requirement is aimed at the nature of the assertion, not the target of the statement and it need only attack the "rival product." No explanation for Twin City's departure from state coverage law was articulated or acknowledged.[12] Nor was any articulation of the standards for assessing implicit disparagement under New York law articulated.[13] Talley's claims under Cal. Civ. Code § 1770(a)(8) would satisfy the "clear or necessary inference" test for implicit disparagement from *Swift*.[14] This California Supreme Court case, decided a year after *Natural Organics[15]*, provided a rationale to establish potential coverage for implicit disparagement.[16] It distinguished two analogous implicit disparagement cases and also ignored a number of cases that opposing counsel elected not to address in its Appellee's Reply Brief.[17]

---

[12] *Lembcke v. United States*, 181 F.2d 703, 707 (2d Cir. (N.Y.) 1950) ("In a diversity case the federal court must follow the decision of a state trial court, absent higher state authority . . . .").

[13] See Jarret A. Williams, *Coverage: The Duty to Defend Implicit Claims*, Vol. 19, No. 2 (March/April 2009).

[14] *Hartford Cas. Ins. Co. v. Swift Distribution, Inc*., 59 Cal. 4th 277, 295 (2014) (distinguishing three implicit disparagement cases successfully litigated by Gauntlett & Associates).

[15] *Nat. Organics, Inc. v. OneBeacon Am. Ins. Co*., 959 N.Y.S.2d 204, 207 (N.Y. App. Div. 2013).

[16] *Aaron Abadi v. American Airlines, Inc., et al*., No. 23-CV-4033 (LJL), 2024 WL 1346437, at *49 (S.D.N.Y. Mar. 29, 2024) (citing *Swift* as consistent with New York law on scope of actionable disparagement claims).

[17] See Section III herein.

Critically, the implicit disparagement claims under state statutes are also generated from consumer injury caused by Tzumi's advertising. [JA19-23; JA66-74; JA82-83] As the court explained in *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,* 59 Cal. 4th 277, 294 (2014):

> [A]n insurer had a duty to defend where a competitor had sued the insured, E.piphany, for falsely claiming to be "the 'only' producer of 'all Java' and 'fully J2EE' software solutions, which was an 'important differentiator' between competing products, even though some competitors offered products with these exact features." . . . Relying on *E.piphany,* the court in [*Burgett, Inc. v. Am. Zurich Ins. Co.,* 830 F. Supp. 2d 953, 953 (E.D. Cal. 2011)] similarly found that an insured was "potentially liable for disparagement by implication" when faced with a suit alleging it had made a false claim to be "the only owner" of a particular trademark. (*Id.* at p. 964.).

### Settlement Recitals Are "Extrinsic Evidence"

The court erred by ignoring the Settlement Agreement's explicit explanation of the complaint as "alleging . . . [that the insured's] implicit disparagement of its competitors." [JA428; SPA1] These clarifying allegations were sufficient to trigger Burlington's duty to defend a suit claiming "'[p]ersonal and advertising injury' . . . arising out of . . . [o]ral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products, or services."[18] [JA242; JA282; JA428-31; JA448; SPA1-3; SPA21]

---

[18] *Tzumi Elecs. LLC v. Burlington Ins. Co.*, No. 22 CIV. 9995 (KPF), 2024 WL 217764, at *8 (S.D.N.Y. Jan. 19, 2024).

**Competitors Or Products Need Not Be Disparaged**

As *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1138 (2020) explained:

> Such [untrue] statements, if disparaging, can be actionable . . . by consumers under the unfair competition law, false advertising law and the CLRA.

Disparagement claims focus on the protection of economic interests, not reputational interest.[19] New York law expressly recognizes coverage for claims of implicit disparagement.[20] And no particular competitor need be named in the allegedly disparaging statement.[21] The SAC "Pocket Juice" endurance AC Power Banks displayed in its packaging "exploits consumers' preferences for power banks with higher mAh." [JA68] It evidences implicit disparagement by necessarily differentiating its product from the necessarily overpriced competitors offering less mAh capacity at higher prices. [JA58-62] To find those claims insufficient is to ignore that "[t]he Underlying Plaintiffs maintained that they relied on these misrepresentations when purchasing Tzumi products in retail stores and thus were harmed by these deceptive acts." [JA433; SPA6] Burlington's coverage under

---

[19] *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 292 (S.D.N.Y. 2016) ("[For a disparagement claim,] [s]pecial damages are 'limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses.'") (*quoting Kirby v. Wildenstein,* 784 F.Supp. 1112, 1116 (S.D.N.Y.1992)).

[20] *Nat. Organics,* 959 N.Y.S.2d at 207.

[21] *Vector Prods. v. Hartford Fire Ins. Co.,* 397 F.3d 1316, 1319 (11th Cir. (Fla.) 2005) ("Policies are ambiguous as to whether the insured must mention a plaintiff's name in an advertisement.").

"advertising injury" offense (d) contains no requirement that Tzumi name a specific competitor. [JA35; JA91-92; JA240; JA242] That ambiguity must be resolved in favor of Tzumi to find potential coverage.

### District Court Failed To Consider Potential For Amendment

The district court asserted that the Settlement Agreement was insufficient because it did not "introduce any new factual allegations containing specific misstatements or misrepresentations that Tzumi made regarding its competitors."[22] [JA448; SPA21] But a statement suffices that *could* reflect negatively upon competitors which looks to inferences and implied facts. *Nat. Organics,* 959 N.Y.S.2d at 207 ("The statement that HON had been appointed the exclusive distributor of [Natural Organics'] products . . . **could imply** that NPN's inventory . . . was unauthorized.") (Emphasis added).[23]

### ARGUMENT

## I. IMPLICIT, INDIRECT DISPARAGEMENT WAS ALLEGED

The Policy defines "personal and advertising injury" as "injury . . . arising out of . . . oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services." [JA242]

### A. The Three-Part Test For Indirect Implicit Disparagement

---

[22] *Tzumi Elecs.*, No. 22 CIV. 9995 (KPF), 2024 WL 217764, at *8.

[23] David A. Gauntlett, *Coverage Based on Potential for Amendment of Underlying                                                                 Pleadings*, https://www.gauntlettlaw.com/news/ltstlvxs1vwlifa3rni6btlbkoqkap (Sep. 3, 2023).

### 1. The Publication Need Only Disparage Another's Products

Burlington's policy provides coverage for "'[p]ersonal and advertising injury' . . . arising out of . . . [o]ral or written publication, in any manner, of material that … disparages a person's or organization's goods, products, or services." [JA242] Consequently, there are three elements that must be satisfied to confer coverage: (1) "publication of material; in any manner;" (2) "[that] disparages a person's or organization's goods, products, or services;" and (3) "injury arising out of" that published disparagement. [JA242] In order to satisfy the test, however, those elements need not be explicitly alleged.[24] Only the factual basis creating the *potential* for the elements must be present.[25]

The term "publication" generally refers to the communication of information to a third person.[26] "'[C]ommunication (as of news or information) to the public'" has been held to satisfy the "publication" requirement.[27] Here, Tzumi allegedly

---

[24] *See Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 398-99 (S.D.N.Y. 2021).

[25] *See Id.*

[26] *Virtual Bus. Enterprises, LLC v. Maryland Cas. Co.*, No. CIVA07C12070MMJ, 2010 Del. Super. LEXIS 141, *14–15 (Del. Super. Apr. 9, 2010) *appeal refused*, 994 A.2d 744 (Del. 2010) ("Courts routinely have held that one party's communication of defamatory statements about a second party to a third party constitutes 'publication.'")

[27] *Tower Nat'l Ins. Co. v. Nat'l Bus. Capital, Inc.*, 2014 NY Slip Op 31985(U), *9–10 (Sup. Ct. 2014) (holding that transmission of 10,000 faxes qualified as sufficient communication) (*quoting Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565, 572 (Mass. 2007)).

"published" disparaging material online, in advertising, on labels, and in retail stores across the country. [JA19-22; JA73-74; JA374-76]

The SAC alleged that "TZUMI manufactures, markets, and distributes for sale nationwide, including through major retailers such as Walmart and Amazon, a number of models of Power Banks. It does so by prominently representing that the Products have a certain mAh." [JA27; JA70] Indeed, the SAC includes images of Tzumi's product packaging that prominently display its mAh claims. [JA70-71]





### 2. Tzumi's Targeting Of Competitive Products Is Disparagement

The SAC allegations evidence a disparagement claim, especially as clarified by the Settlement Agreement. [JA19-22; JA282-83] The SAC plainly asserts that Tzumi disadvantaged its competitors through advertising:

> 10. For profit and **a higher market share**, TZUMI exploits consumers' preferences for power banks with higher mAh….
>
> 20. … Further, TZUMI is incentivized to mislead consumers to **take away market share from competing products**, thereby increasing its own sales and profits. [JA68; JA70 (emphasis added)]

The policy fails to define "disparage," and New York courts have not assigned a particular meaning. *PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, No. 96-CV-0512E(F), 1997 WL 800874, at *3 (W.D.N.Y. Dec. 31, 1997) held that the policy's "disparagement" offense has no "specialized legal meaning" and should be construed according to its dictionary definition, or "ordinary meaning."

Coverage for "disparagement," as that word is used in a typical insurance policy, is not limited to the "trade libel" tort:

> [T]he policy offense of "disparagement" is not synonymous with common law commercial disparagement. [28]
>
> An accepted legal definition of disparagement of goods is "a statement about a competitor's goods which is untrue or misleading and is made to influence or tends to influence the public not to buy." [29]

---

[28] *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 11 F. Supp. 2d 995, 1000 (N.D. Ill. 1998).

[29] 20-131 APPLEMAN ON INSURANCE LAW & PRACTICE ARCHIVE § 131.3, n.212 (2nd 2011) (*quoting* Donald S. Malecki and Arthur L. Flitner, *Commercial General*

### 3. The "Publication" Is Allegedly Injurious

By marketing its products with the misleading labels advertising higher mAh capacities for its devices, Tzumi denigrated its competitors' products as inferior for not delivering the same value. [JA22-26; JA66-76; JA82-83]

> These factors militate in favor of a rule requiring the insurer to provide a defense where, **notwithstanding the complaint allegations**, underlying facts made known to the insurer create a "reasonable possibility that the insured may be held liable for some act or omission covered by the policy."[30]

## B. Burlington Chose Not To Narrowly Define Disparagement

Although Burlington could have written policy language limiting "disparagement" to specific torts like "trade libel" or "product disparagement," Burlington chose not to do so. [JA242] No specific tort or express allegation of disparagement is required by the Policy. [JA242] An insurer whose policy was issued before Burlington's limited coverage for claims like those asserted that trigger potential coverage under Cal. Civil Code § 1770(a)(8). [31] Its policy language stated:

> [P]rovided that the claim is made or the 'suit' is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged.[32]

---

*Liability,* 73–74 (2d ed. 1986)).

[30] *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 70 (1991) (emphasis added).

[31] *Tria Beauty, Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. C 12-05465 WHA, 2013 U.S. Dist. LEXIS 71499, *4–5 (N.D. Cal. May 20, 2013).

[32] *Id.*

New York agrees that it is not a court's role to rewrite the insurer's policy under the guise of policy construction:

> In *Gilbane* [*Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 31 N.Y.3d 131, 135 (2018)] the New York Court of Appeals declined to rewrite a contract that limited additional insured coverage to those "with whom" the named insured had a contract to also include those "for whom" the named insured worked.[33]

## C. District Court's Specificity In Pleading Requirement Is Untenable

### 1. The References To Cal. Civ. Code § 1770(a)(8) Suffice

The district court erred in discounting the Cal. Civil Code § 1770(a)(8) claims because the statute was not referenced with sufficient specificity:

> Rather, Plaintiff's argument depends on the unreasonable assumption that the Underlying Complaint's passing citation to the entirety of the California false advertising statute [Civil Code § 1770(a)(8)], as part of a longer list of general citations to the consumer protection statutes of eleven states, somehow implicates the specific provision of the California code on which now Plaintiff relies for coverage. [JA441; SPA14]

Such a specificity requirement contradicts the fundamental principle of New York coverage law.

Disparagement is a "deceptive act[] or practice[] in the conduct of trade or commerce." [JA82] "Substantial injury" is alleged by the allegation that consumers "would not have paid as high a price for the Products, or bought the products at all"

---

[33] *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.,* No. 22 CIV. 2171 (KPF), 2023 WL 4896169, at *11 (S.D.N.Y. Aug. 1, 2023).

but for Tzumi's disparaging advertisements. [JA82] The relevant Settlement Agreement recitals highlight "injury . . . arising out of . . . disparagement" demonstrating a "reasonable possibility that the insured may be held liable for some act or omission covered by the policy."[34] [JA282-83] The district court's erroneous characterization of the disparagement allegations as a "passing citation," as if such allegations can be overlooked, is inconsistent with New York law. [JA441; SPA14]

### 2. The SAC Broadly Asserts Statutory Disparagement Claims

The SAC directly asserts claims under a general statute ("California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*") and the specific statute (Cal. Civ. Code § 1770(a)(8)) conveys standing for the disparagement claims made by the SAC, triggering potential coverage. [JA81-83] So do similar listed mirroring statutes under the laws of Illinois, Michigan, and Texas. [JA19-23; JA66-74; JA82-83]

These statutory provisions permit consumer actions for damages for injuries where competitors were less favorably positioned to sell their products to those consumers by alleged advertising misstatements, as here. [JA66-74; JA82-83] The proper course for an insurer faced with vague allegations against its insured is to defend.

---

[34] *Fitzpatrick*, 78 N.Y.2d at 70.

There can be no possible liability under the only CLRA statutory section cited by direct numerical reference (§ 1750) since that statute merely states, in its entirety, that "[t]his title may be cited as the Consumers Legal Remedies Act."[35] The assertion of "Cal. Civ. Code § 1750, *et seq.*" *may* refer to the specific subsection addressing disparagement.

Cal. Civ. Code § 1770(a)(8) expressly includes liability for:

> **Disparaging the goods, services, or business of another by false or misleading representation of fact**.[36]

Since § 1750 itself is not a valid basis of liability, assertion of the statute necessarily means *some* subsection is the source of liability. Absent clarification from the Talley Plaintiffs, Burlington cannot be certain that Cal. Civ. Code § 1770(a)(8) is not that unnamed statute. Discovery tools in the underlying action can clarify the scope of claims asserted rather than at the pleadings stage.[37]

> The CLRA permits "consumers" to file suit pursuant to Cal. Civ. Code § 1770, and further defines a "consumer" to be "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes. *See* Cal. Civ. Code § 1761(d)[.]"[38]

### 3. *Ruder & Finn* and *Fitzpatrick* Set A Low Bar For Specificity

---

[35] Cal. Civ. Code § 1750.

[36] Cal. Civ. Code § 1770(a)(8) (emphasis added).

[37] *Fitzpatrick*, 78 N.Y.2d at 68-70.

[38] *Claridge v. RockYou, Inc.,* 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011).

In *Ruder & Finn, Inc. v. Seaboard Sur. Co.,*[39] the New York Court of Appeals explained why allegations that the insured "unfavorably and falsely disparaged ATI's aerosol products" suffced. It rejected Seaboard's argument that "two solitary, unsubstantiated words" that were part of a "patently groundless and 'shotgun allegation' in the middle of . . . a completely unrelated federal antitrust cause of action which was, itself, undisputedly *not* covered" by Seaboard's policy could not possibly evoke a duty to defend.[40] Seaboard's further attack that "notably absent was any repetition, directly or indirectly, of the [relevant] allegation" fell short as well.[41]

Here, the SAC alleges that "[f]or profit and **a higher market share**, [Tzumi] exploits consumers' preferences for power banks with higher mAh." [JA16; JA68 (emphasis added)] Liability from those attacks led to indirect injury to consumers. [JA19-20] It displaced disparaged competitors who were unable to claim their products as possessing the same mAh capacity, or who had to charge higher prices for products that did have equal mAh capacity. [JA19-20; JA67-69] Tzumi's advertising of its product as able to deliver a particular mAh (at a lower price), when the products were in fact not able to do so, "disparag[ed] [its competitors'] . . . products" and created direct liability for disparagement under Civil Code §

---

[39] *Ruder & Finn, Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 669 (1981).

[40] *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 612 (1986) (addressing facts from *Ruder & Finn*).

[41] *Ruder & Finn*, 52 N.Y.2d at 668.

1770(a)(8). [JA19-22; JA66-74; JA82-83; JA242] That evidenced a potential claim for "implicit disparagement" against competing power bank producers. [JA19-22; JA66-74; JA82-83; JA242]

*Fitzpatrick*[42] clarifies that a defense arises does not require the court to hypothesize or imagine episodes or events that cannot be found in allegations or cannot be deduced from them as the district court did.[43] [JA441-49; SPA14-22] One possibility, as *Fitzpatrick* suggests, is ignorance about some facts.[44] Another possibility, suggested by *Hudson,*[45] is that a plaintiff obfuscated its claims "for strategic adversarial reasons."[46] But at the moment of settlement, any such concerns are abated. The primary issue point there was to specify the claims resolved in the Settlement Recitals to make explicit what was implicit. [JA281-83]

In *Hartford Fire Ins. Co. v. Vita Craft Corp.,* 911 F. Supp. 2d 1164, 1178-79 (D. Kan. 2012), the insurer argued that the "bare bone allegation" that Vita Craft and Imura were "spreading false rumors" about a TSI licensee was too vague and conclusory to constitute a claim for disparagement. The court disagreed noting that:

---

[42] 78 N.Y.2d at 70.

[43] *Stamford Wallpaper*, 138 F.3d at 81.

[44] 78 N.Y.2d at 68-70.

[45] 624 F.3d at 1269.

[46] California and New York coverage law regarding the use of extrinsic evidence to determine coverage issues is only different in that California follows a "facts available" standard, whereas New York adheres to the "facts known" standard. In this case, Burlington was apprised of relevant facts, so the distinction is irrelevant.

Although sparse, the complaint alleges that Vita Craft and Imura "engaged in and orchestrated a scheme to damage and injure TSI by spreading false rumors regarding one of TSI's licensees."[47]

### D. The District Court Ignored Salient Extrinsic Evidence

The district court's Order states: "[O]n its own review of the record, [the Court] finds that the facts alleged in the Underlying Action do not provide for a reasonable possibility of coverage under the Policy. . . ." [JA440; SPA13] Not so. There are 3 problems with the court's conclusion that no duty to defend arose from the Talley allegations:

### 1. Extrinsic Evidence Is Not Limited To Formal Discovery

The district court asserts that the only method to secure clarification of the claimant's allegations is time consuming formal discovery, because it permits "the Underlying Plaintiffs to refine their position with respect to the specific violations alleged under the state consumer protection statutes." [JA442; SPA15] But this statement followed the court's concession that "facts might have been developed that could plausibly implicate the provision on which Plaintiff now relies.[48]" [JA442; SPA15] No explanation is proffered as to why recitals by the Underlying Plaintiff in a Settlement Agreement (as opposed to discovery responses) should be

---

[47] *Id.* at 1179.

[48] *See High Point Design, LLC v. LM Ins. Corp.,* 911 F.3d 89, 95–97 (2d Cir. 2018) (observing that discovery requests made in underlying litigation served as extrinsic evidence that such litigation was covered by the relevant insurance policy).

any less acceptable as "extrinsic evidence" satisfying New York's "reasonable potential for coverage" argument.

### 2. Burlington Saw The Settlement Agreement Before Its Execution

The Settlement Recitals here were drafted to clarify the scope of all issues settled by the class. [JA281-95] The draft agreement was sent to Burlington prior to its second denial of coverage. [JA100] The proposed Settlement Agreement was submitted on July 20, 2022 [JA95; JA210] but the parties did not sign until August 30, 2022 [JA210; JA288], after Burlington denied a defense again. Burlington was given adequate time to review, comment, and/or explore its scope.

The district court's refusal to consider the Settlement Agreement recitals is especially problematic given the acknowledgement that:

> Tzumi interprets the allegations in the Complaint as alleging that Tzumi implicitly asserted that its power products were of significantly higher value but at a lower price than similar products if its competitors, implicitly negatively comparing competing products[.] [JA282; JA432-34; SPA6-7]

The district court speculates that Tzumi "sought to transmogrify the actual allegations made in the Underlying Complaint into something resembling a covered disparagement claim." [JA442; SPA15] No evidence supports this colorful statement. Nor does the district court's statement acknowledge that Burlington elected to not investigate any facts associated with the Settlement Agreement.

Instead, Burlington's promptly reaffirmed its earlier denial of a defense without supplemental analysis of the impact of the recitals is inexplicable. [JA33-41]

### 3.  Settlement Agreement Recitals Are Extrinsic Evidence

The district court also refused to address or distinguish a number of cited court decisions which concluded that uncontested "extrinsic evidence" based on "Settlement Agreements" should be considered in evaluating a duty to defend. [JA447-49; SPA20-22]

> [Disparagement was asserted] because Plaintiffs gave people the false impression that NACA wasn't free of charge and made people believe that NACA was being deceptive. **Further, in their settlement agreement with Plaintiffs, NACA again states that Plaintiffs "made false and disparaging statements about NACA's services" and that "as a result of" those statements, NACA "suffered damages to its reputation and goodwill."**[49]

The claims recited in the Settlement Agreement must be evaluated as if there were either a proposed amended complaint or filed amended complaint once the Settlement Agreement was executed.[50] The court's failure to consider these cases evidences an opinion untethered to cogent insurance coverage analysis.[51] [JA442; SPA15]

---

[49] *First One Lending Corp. v. Hartford Cas. Ins. Co.,* No. SACV 13-01500, 2017 U.S. Dist. LEXIS 36548, *8 (C.D. Cal. Mar. 13, 2017) (emphasis added).

[50] *In re Residential Capital, LLC,* Nos. 12-12020 (MG), 15-01025 (DSJ), 2022 Bankr. LEXIS 3601, *47–48 (Bankr. S.D.N.Y. Dec. 21, 2022).

[51] David A. Gauntlett, *New York District Court Disputes Whether Settlements Clarify Potential Coverage*, https://www.gauntlettlaw.com/news/new-york-district-

The Settlement Agreement recitals are like other extrinsic evidence — such as interrogatory requests, which are readily considered in evaluating the scope of the claims asserted.[52] [JA281-95] In response to the proposed Settlement Agreement, Burlington chose to simply repeat its denial of coverage rather than investigate the nature of the claims at issue. [JA34-41] Burlington's case file produced in discovery revealed no evidence that Burlington reviewed the Settlement Agreement's terms before repeating its denial of a defense. [JA190; JA192-206]

The language of a Settlement Agreement, much like a Pre-Trial Conference Order that would have been issued had the underlying action not settled,[53] confirms the reasonable inferences to be drawn from the complaint "confirm[ing] or clarify[ing] the nature of the underlying claims." [JA282-83] Here, the SAC necessarily asserted that Tzumi caused indirect injury to those claimants by implicitly disparaging Tzumi's competitors, allowing Tzumi to acquire more market share in the portable power bank market by "influenc[ing] or tend[ing] to influence the public not to buy" competitors' products. [JA19-23; JA66-74; JA82-83]

---

court-disputes-whether-settlements-clarify-potential-coverage (Feb. 1, 2024).

[52] *High Point Design,* 911 F.3d at 97 ("Buyer's Direct's discovery demands sought information related to advertisements and are extrinsic evidence that supports interpreting the counterclaim's allegation of 'offering for sale' to include a claim for damages due to advertising.").

[53] *Vogelfang v. Riverhead Cnty. Jail*, No. 04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064, *38–39 (E.D.N.Y. Apr. 19, 2012) ("[A] final pretrial order 'supersede[s] all prior pleadings and control[s] the subsequent course of the action.'" (*quoting Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 475 (2007)); *See also Perma Research & Dev. Co. v. Singer Co.*, 542 F.2d 111, 117 (2d Cir. (N.Y.) 1976).

### E. The Potential for Amendment Supports Finding A Defense

A series of New York cases address that this doctrine reflects bedrock New York law:

> If there is any possibility that [the alleged facts could result in liability], the insured is entitled to a defense irrespective of the plaintiff's characterization of the claims and even if the complaint alleges also claims which, if established, would be outside the policy's coverage. [54]

> [T]here never has been any assurance that the case…could not result in insured liability [given the possibility of a subsequent] amendment of the pleadings at trial.[55]

> The insurer had a duty to defend because complaints could be amended to allege covered defamation.[56]

The Settlement Agreement recitals reinforce the claims of implicit disparagement, as well as direct reference to multiple state statutes (including "Cal. Civ. Code § 1750, *et seq*."). [JA17-23; JA66-74; JA82-83; JA282-83] Each independently revealed liability for implicit disparagement as consumers were injured through publications adversely impacting Tzumi's competitors. [JA19-23; JA66-74; JA82-83]

The SAC asserts a variety of unfair competition and consumer protection causes of action. [JA82-83] These claims all stem from the injury caused to

---

[54] See *Harrington Haley L.L.P. v. Nutmeg Ins. Co.*, 39 F. Supp. 2d. 403, 407 (1999).

[55] *Brewer v Vill. Of Old Field.*, 311 F. Supp. 2d 382, 387 (E.D.N.Y. 2004) (*citing Harrington Haley*, 39 F. Supp. 2d at 407).

[56] *Emps. Ins. Co. v. Duplan Corp.*, 899 F. Supp. 1112, 1119 (S.D.N.Y. 1995).

consumers by Tzumi's advertising. [JA19-29; JA66-74; JA82-83] As Judge Failla

concedes, "facts might have been developed that could plausibly implicate the

provision on which Plaintiff now relies." [JA442; SPA17] Rejecting consideration

of the Settlement Agreement recitals herein would force the parties to litigate the

underlying action to resolution in order to secure policy benefits in contravention of

New York public policy.

## II. NEW YORK LAW RECOGNIZES COVERAGE FOR IMPLICIT DISPARAGEMENT

### A. New York Embraced Implicit Disparagement In *Natural Organics*

New York coverage law analyzing implicit disparagement shows the Talley

claims meet the *Dollar Phone*[57] test even though that court's analysis improperly

focused on the "gravamen" of the complaint.[58] The "some reference or comparison

to the competitor's products" test is met as advertisements of superior product

performance to competitors' asserted suffices to compel finding a defense arose.[59]

No more is required.[60]

---

[57] *Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co*., No. CV-09-1640 DLI VVP, 2012 WL 1077448, at *6-8 (E.D.N.Y. Mar. 9, 2012), *aff'd on other grounds*, 514 F. App'x 21 (2d Cir. 2013).

[58] *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.,* 295 F. Supp. 2d 335, 342-43 (S.D.N.Y. 2003) ("[T]he duty to defend is not restricted to the 'core complaint' or to the underlying plaintiff's 'primary' grievance.").

[59] *Dollar Phone,* No. CV-09-1640 DLI VVP, 2012 WL 1077448, at *8.

[60] *Syvertsen v. Great Am. Ins. Co.*, 700 N.Y.S.2d 289, 291–92 (N.Y. App. Div. 1999) (internal quotations omitted) ("A party's characterization of the causes of action alleged . . . are not controlling . . . [;] we . . . determine the nature of the claims based upon the facts alleged and not the conclusions which the pleader draws therefrom.").

As *Natural Organics* recognized, a statement may be disparaging so long as it "could imply" a negative message about a competitor's goods or services:

> The statement that HON had been appointed the exclusive distributor of Nature's Plus products in the Nordic region could imply that NPN's inventory of Nature's Plus products was unauthorized[.][61]

*Natural Organics* readily accepted the possibility that disparagement can flow from "material misrepresentations . . . about the . . . characteristics of . . . defendant's . . . goods."[62] While Tzumi's injurious publications never expressly mentioned competitors, they directly described the mAh capacity of its own products. [JA15-23; JA66-74] Tzumi's publications presenting its products' price points as fair value for the mAh capacity they wrongfully proclaimed "could imply" that competitors sold inferior products at higher prices and thus were price gougers.[63] [JA19; JA66-74; JA82-83; JA137]

## B.    Specific Allegations Of Implicit Disparagement Suffice

The SAC alleges that Tzumi marketed its products with very specific assertions. [JA15-18; JA66-74; JA82-83] In particular, Tzumi advertised its power banks in a manner suggesting to customers that they could deliver a certain amount of mAh. [JA16; JA68]

---

[61] 959 N.Y.S.2d at 207-08 (citing *Unique Sports Generation,* No. 03 CIV. 8324 JGK DF, 2005 WL 2414452, *10 (S.D.N.Y. Sept. 30, 2005)) (recognizing implicit disparagement as within the spectrum of actionable disparagement claims).

[62] *Nat. Organics,* 959 N.Y.S.2d at 207-08.

[63] *Id.*

The allegations in the SAC, clarified by the Settlement Agreement, satisfy the actual test as "specific assertions of unfavorable facts reflecting upon the rival product."[64] [JA15-18; JA66-74; JA82-83; JA282-283] This in contrast to the test the district court applied requiring specific assertions of unfavorable facts reflecting upon a specific rival product. [JA440-45; SPA13-18]

*JMZ USA*[65] did *not* rule that there was no disparagement. Rather, it determined no *injury* arose from disparagement.[66] The opinion is silent on the issue of whether disparagement occurred. In the Talley Action, the allegations include claims based on Cal. Civ. Code § 1770(a)(8), which has been held to impose liability for indirect injury.[67] [JA19-22; JA66-74; JA82-83] Given this broader scope for potential injury, the inability to find *injury* in *JMZ USA*[68] does not matter.

## C.    Negative Comparative Statements Imply Disparagement

*Del Monte*[69] analyzed whether indirect injury created coverage for disparagement of competitors' products under § 815 ILCS 510/2, a statute equivalent

---

[64] *Elite Brands,* 164 F. App'x at 62.

[65] *JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*, 36 A.D.3d 555, 556–57 (N.Y. App. Div. 2007).

[66] *Id.*

[67] *See Miller v. Ghirardelli Chocolate Co.*, No. C 12- 04936 LB, 2013 U.S. Dist. LEXIS 49733, *15–16 (N.D. Cal. Apr. 5, 2013) (consumers sued for allegedly disparaging statements by Ghirardelli against its competitors that led them to prefer its products despite their higher prices).

[68] 36 A.D.3d at 556–57.

[69] *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, No. CIV.A. 06 C 1658, 2006 WL 2331144, at *5-6 (N.D. Ill. Aug. 8, 2006), *aff'd*, 500 F.3d 640 (7th Cir. 2007).

to Cal. Civ. Code § 1770(a)(8) and also asserted in the Talley Action. [JA19-23; JA66-74; JA82-83] Even though no purchasing claimants were themselves disparaged, the court concluded that "Del Monte's alleged efforts to publicly disparage its competitors' pineapples inevitably promoted its extra-sweet pineapples." *Id.*

As in *Del Monte*, the key disparagement in *Talley* was based on negative comparative communication in a class action suit brought by consumers. "Del Monte launched a campaign to declare its pineapples were sweeter than those of its competitors," erroneously relying on their subsequently challenged status as patented goods.[70] Subsequent cases have clarified why negative comparative statements can inferentially evidence disparagement without necessarily implicating the "knowledge of falsity" exclusion.[71]

## III.  PRODUCT EQUIVALENCE CASES SUPPORT CLAIMS HERE

Talley's fact allegations [JA67] (clarified by the Settlement Agreement) evidencing implicit disparagement based on Tzumi's allegedly "false comparative

---

[70] *Id.* at *5.

[71] *Axiom Ins. Managers, LLC v. Capitol Spec. Ins. Corp.*, 876 F. Supp. 2d 1005, 1013 (N.D. Ill. (E.D.) 2012) ("Subsequent to *Del Monte*[, No. CIV.A. 06 C 1658, 2006 WL 2331144, at *5-6], the Illinois Appellate Court, [*Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 240 (2008)] stated: '[s]ignificantly, alleged deliberate misconduct does not always bring a claim within an intentional conduct exclusion,' and quoted [*Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 746 (7th Cir. 2001)] ['Proof of deliberateness would merely be icing on the cake.']").

statements" about its products features "relative to competitors" amount to implicit disparagement under the *Natural Organics* standard.[72] [JA62-74; JA282-83]

Following the logic of *Jar Labs*:

> [A] statement equating a competitor's product with an allegedly inferior one is logically indistinguishable from, and no less disparaging than, a statement describing one's own product as "superior" to the competitors.[73]

The coverage cases that follow concluded that contested assertions of equivalent performance to competitors evidenced implicit disparagement. So here, where Tzumi's promotional materials assert their product's superior performance and value to competitors' products, such assertions conclusively evidence the disparaging character of Tzumi's promotional materials vis-à-vis its competitors' rival products. [JA19-23; JA66-74]

*Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 F. App'x 596, 597 (7th Cir. (Wis.) 2007) (Publications "drew a comparison between its products and stainless steel products," not a specific comparison with the underlying plaintiff's products);

*Cincinnati Ins. Co. v. Crown Labs., Inc.*, No. 2:08-CV-240, 2010 U.S. Dist. LEXIS 164770, *22 (E.D. Tenn. Mar. 30, 2010) ("[The underlying complaint] states

---

[72] *Nat. Organics,* 959 N.Y.S.2d at 207 ("The statement that HON had been appointed the exclusive distributor of [Natural Organic's] products . . . could imply that NPN's inventory . . . was unauthorized.").

[73] *JAR Lab'ys LLC v. Great Am. E & S Ins. Co.,* 945 F. Supp. 2d 937, 944 (N.D. Ill. 2013).

that the misleading advertising has misled consumers into believing that Lavoclen is a generic equivalent.");

*Nat'l Union Fire Ins. Co. v. Seagate Tech., Inc.*, 466 F. App'x 653, 655 (9th Cir. (Cal.) 2012) (a statement of product equivalence was enough to infer implicit disparagement that convolves technology was no better than Seagate's).[74]

A post *Natural Organics* implicit disparagement case, *Swift*[75], adopted a "clear or necessary" inference test. The court concluded that allegations of "disparagement" for purposes of commercial liability coverage "(1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business."[76] *Id.* at 291.

That test was applied in *Hartford Cas. Ins. Co. v. Vogue Int'l, LLC,* No. A150921, 2018 Cal. App. Unpub. LEXIS 3467, *2-3 (May 21, 2018) (misleading use of "Organix" triggered Cal. Civ. Code § 1770(a)(8)).

---

[74] David A. Gauntlett, INSURANCE COVERAGE OF INTELLECTUAL PROPERTY ASSETS (2nd ed. [Supp. 2022-1]) by Wolters Kluwer Law/Business, § 17.06[A][4] "Misstatements About 'Equivalence' Evidences Disparagement'," pp. 17-38.

[75] 59 Cal.4th at 279.

[76] David P. Schack, *Coverage for "Disparagement": A Powerful Tool for Triggering the Duty to Defend in Business Disputes*, https://btlaw.com/insights/blogs/policyholder-protection/2014/coverage-for-disparagement-a-powerful-tool-for-triggering-the-duty-to-defend-in-business-disputes (Dec. 18, 2014).

*Dollar Phone*[77] also cited California law, which is consistent with New York law. *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co*., 590 F. Supp. 2d 1244, 1249, 1253 (N.D. Cal. 2008) (advertisement asserting that insured was the "'only" producer of "all Java" and "fully J2EE" software solutions' and that this 'was an "important differentiator" between competing products' disparaged insured's competitors by 'clear implication').

The implied disparaging contention is analogous to that in *Burgett* where the insured allegedly harmed a competitor by falsely "'implying to the marketplace that Burgett had the superior right to use the SOHMER trademark,' and thus, by implication, represented that Persis did not have the rights to the SOHMER trademark."[78]

The *Julie Research* court reasoned that "general statements of comparison, declaring that the defendant's goods are the best on the market, or are better than the plaintiff's [do not constitute disparagement]."[79] But the court's statement, was made in the context of distinguishing specific factual assertions from "mere 'puff[ery]'."[80] Such statements "are privileged so long as they contain no specific assertions of

---

[77] No. CV-09-1640 DLI VVP, 2012 WL 1077448, at *7-9.

[78] 830 F. Supp. 2d at 963.

[79] 25 A.D.2d at 635-36.

[80] *Id.* at 634.

unfavorable facts reflecting upon the rival product."[81] Notably, the full context of the court's statement also reveals the assertion must only "reflect[] upon the rival product," *not* be directed at that product.[82]

New York law does not require a statement *about* a competitor, only a statement that "reflect[s] upon the rival product" to plead potential coverage for disparagement.[83] The "specific assertions" as understood by consumers was that Tzumi's products satisfied "consumer preferences for power banks with higher mAh" [JA16; JA68] misleading consumers to take away market share from competing products, thereby increasing its own sales and profits. [JA70] By marketing its products with misleading labels and advertising higher mAh capacity for its devices, Tzumi necessarily denigrated its competitors' products as inferior for not delivering the same value rendering Tzumi's implicit disparagement construction a "reasonable" one under New York law. [JA22-26; JA66-76; JA82-83]

## IV.   NO EXCLUSIONS BAR A DEFENSE

The district court explicitly did not rule on the issue of potentially applicable exclusions "[b]ecause the Court finds that Plaintiff has not 'established its initial

---

[81] *Id.* at 636.

[82] *Id.*

[83] *Dollar Phone*, No. CV-09-1640 DLI VVP, 2012 WL 1077448, at *7-9.

entitlement to coverage, [the Court] need not consider what consequences for that coverage might have arisen from the [] exclusion[s]' identified by Defendant. *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, No. 21-1082, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022)."[84] [JA440-41; JA454; SPA13-14; SPA27] Tzumi explained to the district court why no exclusion applies. [JA3-10]

Similarly, the Summary Order in *Tzumi Innovations* did not affirm the court's application of two exclusions to bar a defense.[85]

## V. CONCLUSION

This court should reverse the district court rulings by ordering that Burlington's Motion for Summary Judgment be denied and granting Tzumi's Motion for Summary Judgment, as well as all of Tzumi's reasonable defense expenses plus prejudgment interest at the applicable rate of 9% per annum in accord with New York law be awarded from the date of each invoice sent to the insured.[86]

---

[84] *Tzumi Elecs.*, No. 22 CIV. 9995 (KPF), 2024 WL 217764, at *6.

[85] *Tzumi Innovations,* No. 23-1241-CV, 2024 WL 1338804, at *1 ("Summary Order").

[86] *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392 (JPO), 2021 U.S. Dist. LEXIS 60901, *20 (S.D.N.Y. Mar. 30, 2021) ("In a duty-to-defend case, damages are "incurred" when a party pays legal fees and expenses that the breaching party has refused to cover. Thus, courts in such cases ordinarily calculate prejudgment interest as running from the date each legal bill was invoiced . . .") (emphasis added).

Dated:  April 8, 2024

**GAUNTLETT & ASSOCIATES**

By:_____/s/ David A. Gauntlett_____

David A. Gauntlett
5 Pelican Vista Dr.
Newport Coast, CA 9265
Telephone:   (949) 5531010
Facsimile:    (949) 5532050

Attorneys for Plaintiff/Appellant
TZUMI ELECTRONICS LLC

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), the undersigned certifies that the attached brief has been prepared in proportionally spaced Times New Roman typeface of 14 points, using Microsoft Office Word 2016.

This brief complies with Rule 32(a)(7)(B)(i) in that it is a principal brief which contains, exclusive of portions excluded by Rule 32(a)(7)(B)(iii), 8,288 words as calculated by the word count utility of Microsoft Office Word 2016, which was used to prepare the brief.

Dated: April 8, 2024

**GAUNTLETT & ASSOCIATES**

By:_____/s/ David A. Gauntlett_____

David A. Gauntlett
5 Pelican Vista Dr.
Newport Coast, CA 92657
Telephone: (949) 5531010
Facsimile: (949) 5532050

Attorneys for Plaintiff/Appellant
TZUMI ELECTRONICS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, I electronically filed the following

document:

**APPELLANT'S OPENING BRIEF AND SPECIAL APPENDIX AND JOINT**

**APPENDIX VOLUMES 1 THROUGH 2**

with the Clerk of Court of the United States Court of Appeals for the Second

Circuit using the CM/ECF system which such filing will be sent via ECF and U.S.

Mail to the following:

James M. Adrian
Adrian & Associates, LLC
200 Park Avenue, Set 1700
New York, NY 10166
(646) 632-3703
jim@adriancassidy.com

Attorneys for Defendant/ Appellee
THE BURLINGTON INSURANCE
COMPANY

Dated: April 8, 2024                     /s/ David A. Gauntlett
                                         David A. Gauntlett

304542_29.docx